UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

BRIANNA JENKINS, by and through
DANIELLE ALLEN, her legal guardian,

    Plaintiff,

v.

JFK MEDICAL CENTER, LP, d/b/a
JFK Medical Center North Campus,
KUNAL KAPILA, M.D., and
NADIA YOLANDE GORDON, R.N.

    Defendants.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Danielle Allen, as legal guardian of Brianna Jenkins, sues Defendants JFK Medical Center, LP, d/b/a JFK Medical Center North Campus, Kunal Kapila, M.D., and Nadia Yolande Gordon, R.N. and alleges:

### INTRODUCTION

1. Brianna Jenkins is the victim of medical malpractice and suffered a resulting brain injury at the hospital owned and operated by Defendant JFK Medical Center, LP, which has left her in a minimally conscious state.

2. To pursue medical malpractice claims against the hospital and those who provided Ms. Jenkins negligent healthcare, Plaintiff retained the services of counsel, who completed an investigation and in February 2021 served a notice of intent to initiate litigation on Defendants pursuant to section 766.106, Florida Statutes.

3. In response, Defendants agreed not to contest liability in a civil lawsuit and to arbitrate Ms. Jenkins's damages arising from the alleged medical malpractice, as authorized by the Florida medical malpractice arbitration law, section 766.207, Florida Statutes.

4. Accordingly, there is a medical malpractice arbitration proceeding pending, *Jenkins v. Kapila*, Case No. 21-001949MAz, State of Florida, Division of Administrative Hearings (the "Arbitration"). Liability is not at issue in the Arbitration, only the amount of the damages to which Ms. Jenkins is entitled.

5. Ms. Jenkins will require extensive medical and attendant care and equipment for the remainder of her life. She is without the funds to pay for this care and is eligible for the Medicaid health program. Also, because of the debilitating and permanent nature of her injury, Ms. Jenkins applied for and will most certainly be awarded disability benefits under the federal Supplemental Security Income ("SSI") program and, so, will be eligible to receive Medicare benefits two years after her SSI disability entitlement date. 42 C.F.R. § 406.12(d)(1). Any future Medicare and Medicaid healthcare benefits Ms. Jenkins receives will be paid by the Centers for Medicare Services ("CMS"). CMS is the federal agency that administers the Medicare and Medicaid programs.

6. Plaintiff asserts in the Arbitration that Ms. Jenkins is entitled to and must recover damages for the expenses that will be paid for by Medicare and Medicaid so that Ms. Jenkins may comply with CMS's rights to reimbursement and federal law designating the Medicare and Medicaid programs as secondary payers. However, Defendants reject this position. They maintain that Ms. Jenkins may not recover damages in the Arbitration for those expenses that will be paid for by Medicare and Medicaid, notwithstanding that this would leave Ms. Jenkins without the funds to repay the federal programs and render the federal taxpayers the primary payers of her damages.

7. Plaintiff has filed this action because she is in doubt as to Ms. Jenkins's legal rights and obligations under federal law and the Florida and federal constitutions. Plaintiff requires clarification on the federal law that applies and whether that law preempts or prohibits Defendants' interpretation of the Florida statutes governing the award of arbitration damages.

## PARTIES, JURISDICTION, AND VENUE

8. Plaintiff Danielle Allen is Ms. Jenkins's plenary guardian. As previously alleged, Brianna Jenkins is the victim of medical malpractice perpetrated by Defendants, who have agreed not to contest liability for this negligence.

9. Defendant JFK Medical Center, LP, d/b/a JFK Medical Center North Campus ("JFK"), owns and operates the hospital where Ms. Jenkins was negligently treated.

10. Defendant Kunal Kapila, M.D., is a licensed medical doctor, practicing internal medicine, who negligently treated Mrs. Jenkins at JFK.

11. Defendant Nadia Yolande Gordon, R.N., is a licensed registered nurse who negligently treated Mrs. Jenkins at JFK.

12. This is an action for declaratory judgment brought pursuant to Chapter 28, U.S.C. § 2201 and Federal Rule of Civil Procedure 57. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 2201 (the Declaratory Judgment Act), and 28 U.S. C. § 1332 (Diversity). As alleged below, an actual case or controversy concerning federal law and Ms. Jenkins's rights under the United States Constitution has arisen between the parties, which threatens injury to Plaintiff by depriving Ms. Jenkins of the damages to which she is entitled and yet rendering Plaintiff liable for the reimbursement of conditional payments made by government programs.

13. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Ms. Jenkins's claims that form part of the same case or controversy.

14. Pursuant to 28 U.S.C. § 1391, venue is proper in the Southern District of Florida, where a substantial part of the events giving rise to the claim for declaratory relief occurred.

15. This Court has personal jurisdiction over the Defendants because they reside or conduct business in this District.

## FACTS GIVING RISE TO COMPLAINT

A. **Ms. Jenkins's Injuries and Damages**

16. On September 12, 2020, Ms. Jenkins went to JFK Medical Center North Campus with symptoms of abscess and sepsis. She was 26 years old and otherwise in good health.

17. JFK's staff and the Defendant healthcare providers, Dr. Kapila and Nurse Gordon, failed to appreciate the seriousness of Ms. Jenkin's condition and her sepsis worsened, causing her to develop hypokalemia and hypomagnesemia.

18. Over the next fourteen days, and under the care of Defendants, Ms. Jenkins's condition deteriorated. Then, during the evening of September 27 and into the morning of September 28, and because of the Defendants' failures, Ms. Jenkins suffered a series of seizures. Throughout, Defendants failed to appreciate and treat Ms. Jenkins's condition

19. Ultimately, Ms. Jenkins began to demonstrate symptoms of respiratory distress. Rather than take action to protect Ms. Jenkins's airway, Defendants and their staff failed to report to Ms. Jenkins's bedside and instead repeatedly administered Ativan, a respiratory depressant. As a result, Ms. Jenkins suffered an acute anoxic/hypoxic brain injury, which has left her in a minimally conscious state.

20. Ms. Jenkins is severely injured and disabled and in need of around-the-clock care. Whereas Ms. Jenkins was fully functional and employed before this incident, she is now minimally conscious and confined to a hospital bed. She is unable to walk, talk, or feed herself, experiences pain and discomfort, and is entirely dependent upon others for basic functions.

Grossman Roth Yaffa Cohen, 2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, FL 33134

21. Ms. Jenkins's injuries are permanent. She will require constant medical and attendant care for the remainder of her life.

22. Given the severity of her disability, Ms. Jenkins has applied for and will most certainly be granted disability benefits from the SSI program. Accordingly, under the current law, Ms. Jenkins will be eligible to receive Medicare benefits 24 month from the date of her SSI eligibility determination. At that point, and assuming the Medicare program operates as it does today, Ms. Jenkins's health care providers will bill Medicare for the cost of her extensive medical care and Medicare will make conditional payments to these providers on Ms. Jenkins's behalf.

23. In the meantime, Ms. Jenkins is being cared for at a facility in Orlando, Florida, where she is receiving constant and highly skilled inpatient care. The cost of this care is being borne by Ms. Jenkins.

24. Through the Medicaid program, CMS may cover certain of Ms. Jenkins's healthcare expenses before Ms. Jenkins is eligible for Medicare.

B. **The Medical Malpractice Arbitration**

25. The Arbitration is proceeding pursuant to section 766.207, Florida Statutes, the statute authorizing medical negligence arbitration proceedings as an alternative to traditional civil tort actions. In arbitration, liability is admitted, and only damages are arbitrated, but the claimant's non-economic damages are capped by statute at $250,000 per incident. Fla. Stat. 766.207(7).

26. By way of background, Section 766.106, Florida Statutes, requires medical malpractice claimants to give prospective defendants pre-suit notice of a lawsuit and gives these prospective defendants the opportunity to investigate the claim over a period of three months. After that time, claimants or prospective defendants may elect to have damages determined by an arbitration panel by serving a request for voluntary binding arbitration of damages.

27. When a prospective defendant agrees to arbitration, it chooses to admit liability.

As explained by the court in *Estrada v. Mercy Hospital, Inc.*, 121 So. 3d 51, 53-54 (Fla. 3d DCA 2013): "[I]n a proceeding for voluntary binding arbitration of a medical negligence claim, the liability of Defendant is admitted, and the only issue is damages, which are set by a panel of three arbitrators, one selected by the claimant, one selected by the defendant, and an administrative law judge designated by the Division of Administrative Hearings who serves as the chief arbitrator."

28. In this case, the presuit investigatory period expired and on May 12 and May 17, 2021, Defendants sent requests for voluntary binding arbitration of damages to Plaintiff, pursuant to section 766.207, Florida Statutes. Plaintiff accepted these offers to arbitrate.

29. Accordingly, the arbitration was initiated with the filing of a stipulated Request for Arbitration on June 18, 2021.

30. In the Arbitration, Plaintiff seeks to recover from the Defendants Ms. Jenkins's non-economic damages, which are capped pursuant to section 766.207(7), and the cost of Ms. Jenkins's past and future medical care and other economic damages, including the cost of the care paid for by Medicare and Medicaid.

31. Defendants have made clear, however, that they will insist that Medicare and Medicaid benefits paid on Ms. Jenkins's behalf in the future be set off from the awarded damages in the Arbitration.

32. By agreement of the parties, the Arbitration will take place between January 20 and 28, 2022.

C. **The Dispute over the Payment of Future Medical Care and the Arbitration Order**

33. Through the Medicare and Medicaid programs, Ms. Jenkins will be eligible for health benefits, meaning that CMS will make conditional payments for medical services on behalf of Ms. Jenkins to the facilities where she is treated and to her medical providers.

34. So, although Defendants' negligence caused Ms. Jenkins's injury, Ms. Jenkins's

medical care will be paid for, conditionally, by the American taxpayer.

35. The parties now dispute whether the Medicare and Medicaid benefits that Ms. Jenkins will receive in the future can be deemed a "collateral source" and set-off from Ms. Jenkins's economic damages award in the Arbitration, or whether federal law prohibits such treatment.

36. Defendants contend that whatever economic damages Ms. Jenkins has sustained must be reduced by the Medicare and Medicaid payments that may have been paid and may be paid in the future for Ms. Jenkins's care. Plaintiff contends this interpretation is prohibited by federal law, which extends to the federal government a right of reimbursement and designates the federal programs as the secondary payors of expenses for tort victims.

37. The statutes that govern are sections 766.207(7)(a) and (c), Florida Statutes, and the definition of "collateral source" set forth in section 766.202(2)(a) (together the "Setoff Provisions"). Section 766.207 contains "offset" language providing that "past and future medical expenses" shall be awardable "offset by any collateral source payments," and that "[d]amages for future economic losses . . . shall be offset by future collateral source payments." Fla. Stat. § 766.207(7)(a), (c).

38. "Collateral sources," for purposes of section 766.207 is defined to include "federal . . . public programs providing medical expenses," but to specifically exclude payments that are "prohibited" from being offset from damages under "federal law."

39. Section 766.202 defines "collateral sources" as follows:

> (2) "Collateral sources" means any payments made to the claimant, or made on his or his behalf, by or pursuant to:
>
> (a)   The United States Social Security Act; any federal, state, or local income disability act; or any other public programs providing medical expenses, disability payments, or other similar benefits, **except as prohibited by federal law**.

(Emphasis added.)

40. Ms. Jenkins maintains that the Medicare and Medicaid benefits she may receive cannot be deemed "collateral source payments" under this definition because federal law prohibits such treatment.

41. Indeed, under federal law governing the Medicare program, the federal government will make only conditional payments on Ms. Jenkins's behalf, and CMS has a right to recover medical expenses incurred from the medical care of a Medicare beneficiary directly from the beneficiary, from the proceeds for any recovery the beneficiary makes, and from the beneficiary's attorneys. *See* 42 U.S.C § 1395y (b)(2), 42 C.F.R. §§ 411.22, 4.11.23(b), 411.24.

42. The purpose of the federal Medicare law, the Medicare Secondary Payor Act ("MSP"), is to make Medicare benefits secondary to benefits payable by a third-party payer and to ensure that the cost of treating injured persons, like Ms. Jenkins, to whom CMS makes care available, is borne by those legally responsible for the injury, not the United States taxpayer. See 42 U.S.C § 1395y (b)(2), 42 C.F.R. §§ 411.22, 4.11.23(b), 411.24.

43. Similarly, the relevant federal Medicaid statutes, 42 U.S.C. § 1396a(a)(25)(A), (B), authorize and require the state of Florida to recover funds expended to Medicaid benefits recipients. Fla. Stat. § 409.910(7), (11).

44. The "Medicaid Third-Party Liability Act" requires participating states to "seek reimbursement for [medical] assistance to the extent of [a tortfeasor's] legal liability," § 1396a(a)(25)(B), and Florida's law acknowledges that "Medicaid be the payor of last resort for medically necessary goods and services furnished to Medicaid recipients. All other sources of payment for medical care are primary to medical assistance provided by Medicaid." Fla. Stat. § 409.910(1).

45. Thus, federal law requiring reimbursement for Medicare and Medicaid expenses prohibits or preempts the application of Florida Statutes in a manner that would excuse a tortfeasor from payment.

46. Notwithstanding that Medicare and Medicaid payments are only conditional and must be reimbursed, Defendants maintain that they may be deemed collateral sources under section 766.202(2)(a), and must, therefore, be offset from the arbitration award under section 766.207(7)(a).

47. The administrative law judges who preside in Florida's medical malpractice arbitration proceedings routinely hold that they do not possess the authority to rule on issues of preemption or the constitutionality of statutes or rules.

### D. The Impact of the Setoff to Which Defendants Contend they are Entitled

48. If Ms. Jenkins's damages in Arbitration are reduced or "offset" for all future conditional Medicare and Medicaid payments on Ms. Jenkins's behalf, Ms. Jenkins will soon be left in an impossible situation: she will be without sufficient funds to reimburse CMS, as required, or to pay for her future care in the event CMS reduces benefits or will not cover expenses at some point during her lifetime. For example, home health care, which Ms. Jenkins requires, is not covered by Medicare.  Nor is certain medical equipment covered by Medicare, and the equipment that Medicare does cover may only be replaced on the schedule set by Medicare.

49. Additionally, given that a damages award or settlement in an arbitration proceeding must be reported to Medicare, Medicare may refuse to pay for Ms. Jenkins's future medical expenses relating to her injury at some point. *See* 42 U.S.C. 1395y(b)(8)(A), (B) (requiring insurers to report to CMS any Medicare beneficiaries who receive a "settlement, judgment, award, or other payment," regardless of whether or not there is a determination or admission of liability).

50. The Government will also be left without the recovery to which it is entitled.  If

Ms. Jenkins is denied recovery of costs of the Medicare and Medicaid services, the Government will not receive the reimbursement from Ms. Jenkins to which it is entitled and will instead bear the entirety of the economic burden for Defendants' negligence.  Thus, the American taxpayer will ultimately be responsible for paying for Ms. Jenkins's care, rather than Defendants.

51. This is the not the scheme provided for by federal law and it is also unconstitutional, as alleged below.  The offset subverts the reimbursement rights provided under federal law and deprives Ms. Jenkins of the full extent of her economic damages which would otherwise be recoverable in a civil suit and would be recoverable by a litigant who was not eligible for these federal programs.  The setoff also arbitrarily discriminates against Ms. Jenkins.

52. The Setoff Provisions also leave Ms. Jenkins's lawyers, The Grife Law Firm, P.A., potentially liable for the repayment of conditional payments made by CMS. *See* 42 C.F.R. § 411.24(g) (Medicare "has a right of action to recover its payments from any entity, including a beneficiary ... [or] attorney ... that has received a primary payment."); *Zinman v. Shalala*, 67 F.3d 841, 844-45 (9th Cir. 1995).  Therefore, Ms. Jenkins's attorneys too have an obligation to ensure that CMS is reimbursed.

53. Notwithstanding all of this, Defendants dispute that federal law prohibits a setoff for Medicare and Medicaid benefits and claim that they are entitled to such a setoff in this case.

54. Thus, the parties have adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment – namely, if this Court does not clarify the impact and demands of federal law as it applies to this controversy, the Government will be rendered the primary payor of Mrs. Jenkins's medical care and Ms. Jenkins will be left without sufficient funds to reimburse the Government or to pay for the medical care she requires to survive.   Plaintiff will also be unable to prepare for the Arbitration, to adequately advance Ms. Jenkins's rights in that proceeding, or to protect Ms. Jenkins against future requirements for repayment.

## COUNT I

## CLAIM FOR DECLARATORY JUDGMENT THAT FEDERAL LAW PREEMPTS OR PROHIBITS MEDICARE BENEFITS FROM BEING OFFSET FROM MS. JENKINS'S ECONOMIC DAMAGES

55. Plaintiff incorporates and realleges the allegations above and further alleges:

56. There is an actual controversy between Plaintiff and the Defendants regarding the application of federal law and Plaintiff is in doubt as to Ms. Jenkins's ability to recover the full extent of her damages, namely, those claimed damages arising from medical care that may be paid for by Medicare in the future.

57. The MSP creates a cause of action by which the United States may recover "from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity." 42 U.S.C. § 1395y(b)(2)(B)(iii).  This law allows the United States to seek reimbursement from the beneficiary herself, from the proceeds of any recovery the beneficiary makes, and from the beneficiary's attorneys.  *See also* 42 C.F.R. § 411.24(g) (Medicare "has a right of action to recover its payments from any entity, including a beneficiary ... [or] attorney ... that has received a primary payment.").

58. Given these rights to reimbursement, Medicare benefits cannot be a collateral source under the Setoff Provisions, as defined above, because such an application would subvert CMS's right to reimbursement from its beneficiary, Ms. Jenkins, and thus be "prohibited by federal law."

59. Defendants disagree and assert that they are entitled to a setoff against the awardable damages for the cost of the medical care that may be paid for by Medicare in the future.

60. Because of this actual, present, and justiciable controversy, Ms. Jenkins stands to be deprived of the damages to which she is entitled.  Also, Ms. Jenkins's lawyers, The Grife Law Firm, P.A., may also be liable for reimbursement of conditional payments made on Ms. Jenkins's

behalf.  *See, e.g.*, 42 U.S.C. § 1395y(b)(2)(B)(iii).

61. Because of the uncertainty with respect to Ms. Jenkins's rights, Plaintiff cannot make any intelligent determination as to how to proceed with arbitrating her claim, presenting Ms. Jenkins's damages, and making provisions for reimbursing Medicare in the future.

62. Accordingly, Plaintiff requests that this Court declare federal law preempts or prohibits Medicare benefits from being offset from Ms. Jenkins's economic damages as collateral source payments.

## COUNT II

### PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT THAT FEDERAL LAW PREEMPTS AND PROHIBITS MEDICAID BENEFITS FROM BEING OFFSET FROM MS. JENKINS'S ECONOMIC DAMAGES

63. Plaintiff incorporates and realleges the allegations in paragraphs 1 through 54 above and further alleges:

64. There is an actual controversy between Plaintiff and Defendant regarding the application of federal law and Plaintiff is in doubt as to the ability to recover the full extent of Ms. Jenkins's damages, including those damages claimed arising from medical care paid for by Medicaid in the past or future.

65. Federal Medicaid law requires participating States to "ascertain the legal liability of third parties ... to pay for [an individual benefits recipient's] care and services available under the [State's] plan," 42 U.S.C. § 1396a(a)(25)(A) and to "seek reimbursement for [medical] assistance to the extent of such legal liability," § 1396a(a)(25)(B).  The supporting Florida law authorizes the state to seek reimbursement from any "third party," including "the [Medicaid] recipient or legal representative." Fla. Stat. § 409.910(7), (11).

66. Conditional payments may be recovered directly from the beneficiary, in this case Ms. Jenkins, where the beneficiary recovers economic damages, and from the beneficiary's

12

attorneys.

67. Accordingly, Medicaid benefits cannot be a collateral source under the Setoff Provisions, as defined above, because such an application would subvert the government's right to reimbursement and thus be "prohibited by federal law."

68. Defendants disagree and maintain they are entitled to an offset against the awardable economic damages for the cost of the medical care paid for by Medicaid in the past and that may be paid for by Medicaid in the future.

69. Because of this actual, present, and justiciable controversy, Ms. Jenkins stands to be deprived of the damages to which she is entitled. Her attorneys will also be liable for reimbursement of conditional payments made on Ms. Jenkins's behalf. *See* Fla. Stat. § 409.910(7)(a), (11).

70. Additionally, because of the uncertainty with respect to Ms. Jenkins's rights, the Plaintiff cannot make any intelligent determination as to how to proceed with arbitrating Ms. Jenkins's claim, presenting her damages, and planning to reimburse Medicaid.

71. Accordingly, Plaintiff requests that this Court declare federal law preempts or prohibits Medicaid benefits from being offset from Ms. Jenkins's economic damages as collateral source payments.

### COUNT III

### CLAIM FOR DECLARATORY JUDGMENT THAT SECTIONS 766.202(2)(a) AND 766.207(7)(a), (c), FLORIDA STATUTES, VIOLATE THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION

72. Plaintiff incorporates and realleges the allegations in paragraphs 1 through 54 above and additionally or alternatively alleges that:

73. The Setoff Provisions provide that once a medical malpractice defendant has offered to arbitrate, the Ms. Jenkins's economic damages shall be "offset" by "collateral source

payments," including "federal . . . public programs providing medical expenses," but specifically excluding payments that are "prohibited" from being offset from damages under "federal law."

74. If Medicare and Medicaid benefits are considered collateral sources in the Arbitration, for Ms. Jenkins, who will be entitled to Medicare and Medicaid benefits, these Setoff Provisions will entitle the Defendants to a setoff for the total care that this program will pay on Ms. Jenkins's behalf in the future. This will leave Ms. Jenkins without the ability to recover compensation for future economic losses, rendering her unable to reimburse the government or to obtain the medical care of her choosing and a burden on the taxpayer for the remainder of her life.

75. In this manner, the Setoff Provisions arbitrarily place Ms. Jenkins in a position different from that of a civil litigant who has not or will not receive medical care paid for by Medicare and Medicaid, and deprive Ms. Jenkins of equal protection under the law, in violation of Amendment XIV, Section 1 of the United States Constitution. Under the Setoff Provisions, Ms. Jenkins is not treated like other medical malpractice claimants, ineligible for Medicare and Medicaid, who would be entitled to the full extent of their economic damages.

76. Accordingly, Plaintiff requests that this Court declare that the Setoff Provisions are unconstitutional and that Ms. Jenkins's Medicare and Medicaid benefits cannot be offset from Ms. Jenkins's economic damages ascollateral source payments.

## COUNT IV

### CLAIM FOR DECLARATORY JUDGMENT THAT SECTIONS 766.202(2)(a) AND 766.207(7)(a), (c), FLORIDA STATUTES, VIOLATE THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION

77. Plaintiff incorporates and realleges the allegations in paragraphs 1 through 54 above and alleges additionally or in the alternative:

78. If Medicare and Medicaid benefits are considered collateral sources in arbitration for Ms. Jenkins, these Setoff Provisions will entitle the Defendants to an offset for the total care

that this program will pay on Ms. Jenkins's behalf in the future. This will leave Ms. Jenkins without the ability to recover compensation for future economic losses, rendering her unable to reimburse the government or to obtain the medical care of her choosing, and a burden on the taxpayer for the remainder of her life.

79. In this manner, the Setoff Provisions deprive Ms. Jenkins of due process of law in violation of Amendment XIV, Section 1, of the United States Constitution.

80. Accordingly, Plaintiff requests that this Court declare that the Setoff Provisions are unconstitutional and that Ms. Jenkins's Medicare and Medicaid benefits cannot be offset from Ms. Jenkins's economic damages as a collateral source payment.

## COUNT V

### PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT THAT SECTIONS 766.202(2)(a), 766.207(7)(a), (c), FLORIDA STATUTES, VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FLORIDA CONSTITUTION

81. Plaintiff incorporates and realleges the allegations in paragraphs 1 through 54 above and alleges additionally or alternatively:

82. If Medicare and Medicaid benefits are considered collateral sources in the Arbitration, for Ms. Jenkins, these Setoff Provisions will entitle the Defendants to a setoff for the total care that this program will pay on Ms. Jenkins's behalf in the future. This will leave Ms. Jenkins without the ability to recover compensation for future economic losses, rendering her unable to reimburse the government or to obtain the medical care of her choosing, and a burden on the taxpayer for the remainder of her life.

83. In this manner, the Setoff Provisions arbitrarily place Ms. Jenkins in a position different from that of a civil litigant who has not received medical care paid for by Medicare and Medicaid, and deprive Ms. Jenkins of equal protection under the law, in violation of Article I,

Section 2 of the Florida Constitution, guaranteeing that all similarly situated persons be treated alike.  Under the Setoff Provisions, Ms. Jenkins is not treated like other medical malpractice claimants who would be entitled to the full extent of their damages.

84. Accordingly, Plaintiff requests that this Court declare that the Setoff Provisions are unconstitutional and that Ms. Jenkins's Medicare and Medicaid benefits cannot be offset from Ms. Jenkins's economic damages as a collateral source payment.

## COUNT VI

### CLAIM FOR DECLARATORY JUDGMENT THAT SECTIONS 766.202(2)(a) AND 766.207(7)(a), (c), FLORIDA STATUTES, VIOLATE THE DUE PROCESS CLAUSE OF THE FLORIDA CONSTITUTION

85. Plaintiff incorporates and realleges the allegations in paragraphs 1 through 54 above and alleges additionally or alternatively:

86. If Medicare and Medicaid benefits are considered collateral sources in the Arbitration, for Ms. Jenkins, these Setoff Provisions will entitle the Defendants to a setoff for the total care that Medicare will pay on Ms. Jenkins's behalf in the future.  This will leave Ms. Jenkins without the ability to recover compensation for future economic losses, rendering her unable to reimburse the government or to obtain the medical care of her choosing, and a burden on the taxpayer for the remainder of her life.

87. In this manner, the Setoff Provisions deprive Ms. Jenkins of due process of law in violation of Article I, Section 9 of the Florida Constitution.

88. Accordingly, Plaintiff requests that this Court declare that the Setoff Provisions are unconstitutional and that Ms. Jenkins's Medicare and Medicaid benefits cannot be offset from Ms. Jenkins's economic damages as a collateral source payment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that a judgment be entered declaring that:

(1) Medicare and Medicaid benefits may not be offset from the economic damages awarded to Ms. Jenkins as collateral source payments because such an offset would be preempted or prohibited by federal law;

(2) Sections 766.202(2)(a), 766.207(7)(a), (c), Florida Statutes, are unconstitutional as applied to Ms. Jenkins because they deprive her of equal protection under the law, in violation of Amendment XIV, Section 1 of the United States Constitution;

(3) Sections 766.202(2)(a), 766.207(7)(a), (c), Florida Statutes, are unconstitutional as applied to Ms. Jenkins because they deprive her of due process of law, in violation of Amendment XIV, Section 1 of the United States Constitution;

(4) Sections 766.202(2)(a), 766.207(7)(a), (c), Florida Statutes, are unconstitutional as applied to Ms. Jenkins because they deprive her of equal protection under the law, in violation of Article I, Section 2 of the Florida Constitution; and

(5) Sections 766.202(2)(a), 766.207(7)(a), (c), Florida Statutes, are unconstitutional as applied to Ms. Jenkins because they deprive her of due process of law, in violation of Article I, Section 9 of the United States Constitution.

Dated this 20th day of August 2021.

**GROSSMAN ROTH YAFFA COHEN, P.A**.
2525 Ponce de Leon Boulevard, Suite 1150
Coral Gables, Florida 33134
Telephone:   305-442-8666
Facsimile:   305-285-1668

By:   */s/ Rachel Furst*
       **RACHEL W. FURST**
       Fla. Bar. No. 45155
       rwf@grossmanroth.com

**THE GRIFE LAW FIRM, P.A.**
The Atrium at Broken Sound
6111 Broken Sound Parkway NW, Suite 300
Boca Raton, FL 33487
Telephone:    561-998-0770
Facsimile:    561-998-0778

By:    /s/ Michael. K. Grife
       **MICHAEL K. GRIFE, ESQ.**
       FBN: 016583
       **CATHERINE C. DARLSON, ESQ.**
       FBN: 112440
       mike@thegrifelawfirm.com
       catherine@thegrifelawfirm.com

*Attorneys for Plaintiff*